The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSEPH LOCHUCH EWALAN,

    Plaintiff,

v.

T. ST. GERMAIN, *et al.*,

    Defendants.

Civil Action No. 21-5519-BJR-MLP

**ORDER ADOPTING REPORT AND RECOMMENDATION**

## I.  INTRODUCTION

Plaintiff Joseph Ewalan ("Plaintiff") instituted this civil action proceeding under 42 U.S.C. § 1983 against Troy St. Germain, Erin Lystad, and Dennis Dahne (collectively "Defendants") related to a hand injury he sustained while incarcerated at the Stafford Creek Corrections Center ("SCCC") in 2019. Plaintiff alleges that Defendants violated his federal constitutional rights when they were deliberately indifferent to his serious medical need and when they failed to properly respond to his grievances regarding the medical care he received for his injury. Currently before the Court is the Report and Recommendation of the Honorable Michelle Peterson, which recommends that this Court grant Defendants' motion for summary judgment and dismiss the case. Having reviewed the motion, opposition thereto, the Report and Recommendation, Plaintiff's objections thereto, the record of the case, and the relevant legal

1

authority, the Court will adopt the Report and Recommendation, grant Defendants' motion for summary judgment, and dismiss the case.

## II.     BACKGROUND[1]

Plaintiff fractured the fifth finger on his right hand on October 4, 2019 during an altercation with his cellmate. He was examined by an unidentified nurse that day and by Defendant St. Germain the next morning on October 5. Defendant St. Germain contacted the on-call physician assistant who ordered that diagnostic imaging of Plaintiff's hand be done the following Monday, October 7. Dkt. No. 47, Ex. A-B. The physician assistant also ordered that Plaintiff receive pain medication, as well as ice and a sling if allowed by the terms of Plaintiff's custody. *Id.* at Ex. A.

Defendant Erin Lystad, a physician assistant, examined Plaintiff on October 7, noted that the x-rays showed that the fifth finger on Plaintiff's hand was fractured, placed a splint around Plaintiff's fourth and fifth fingers, directed Plaintiff to wear the splint until he received further instructions, and instructed him to take pain medication as needed. Dkt. No. 50, Ex. A. Defendant Lystad then initiated the process for scheduling a one-week follow-up appointment. *Id.* at Ex. B. Defendant Lystad also consulted with the Department of Corrections consulting physician, orthopedist Kenneth Sawyer, M.D., who advised that Plaintiff should stay in the splint for four to five weeks. *Id.* at Ex. C. Defendant Lystad notified Plaintiff of Dr. Sawyer's recommendation. *Id.* at Ex. D.

---

[1] *See* the Report and Recommendation (Dkt. No. 57) at pp. 3-7 for a complete recitation of the relevant factual allegations.

Also on October 7, 2019, Plaintiff filed a grievance with the Department of Corrections in which he claimed that he "was in pain", he had not been provided pain medication, he had not been examined by a doctor, and he had been "refused a shower." Dkt. No. 44, Ex. 1 at 2.

On October 9, 2019, Plaintiff removed the split and thereafter submitted several health services kites asking to have the splint fixed because he could not put it back on properly. Plaintiff was scheduled for an appointment on October 16, 2019, but he refused the appointment because it was scheduled as a "sick call," which required a $4 co-pay, instead of a "follow-up" appointment, which apparently would not require a co-pay. Dkt. No. 50, Ex. A.

On October 25, 2019, Plaintiff filed another grievance with the Department of Corrections that he designated as an "appeal" of the October 7 grievance. Dkt. No. 44, Ex. 1 at 3. In the grievance, Plaintiff complained that he was scheduled for a "sick call" instead of a "follow-up" visit and claimed that this was done in retaliation for filing the October 7 grievance. Plaintiff did not request medical treatment in the appeal. Plaintiff filed another appeal on November 1, 2019. *Id*. at 4. Once again, he did not request medical treatment but, rather, requested that the Department of Corrections "INVESTIGATE" the fact that the October 16 medical appointment was designated a "sick call" instead of a "follow-up" appointment. *Id*.

Defendant Dennis Dahane, the grievance coordinator at SCCC, did not resolve the grievances/appeals until January 22, 2020. By that time, Plaintiff had been transferred to another facility and, as a result, Defendant Dahane claimed that he was unable to interview Plaintiff nor review his medical file; nevertheless, Defendant Dahane concluded that there was no evidence to support Plaintiff's claim of inadequate medical care.

Plaintiff claims that his finger has healed improperly and that he is unable to lift things as a result. Plaintiff was examined by an orthopedist on July 27, 2021, during which additional x-

rays were taken, and the orthopedist recommended physical therapy. Plaintiff claims that he has since seen another specialist who indicated that he could try to fix Plaintiff's injury but that it could exacerbate his ongoing hand issues.

### III. DISCUSSION

As stated above, Plaintiff alleges that all three Defendants violated his Eighth Amendment rights because they were deliberately indifferent to his serious medical need. He also alleges that Defendant Dahne violated his due process and First Amendment rights when he failed to respond Plaintiff's grievances in a timely manner. Defendants moved for summary judgment on each of Plaintiff's claims and the Magistrate Judge recommends that the motion be granted, and the case dismissed. Plaintiff timely filed objections to the Magistrate Judge's recommendation so this Court will address each claim in turn.

#### A. The Eighth Amendment Claims

To establish an Eighth Amendment violation for inadequate medical care, Plaintiff must demonstrate that he had a "serious medical need," and that Defendants' response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). An inadvertent or negligent failure to provide adequate medical care is insufficient to establish a claim under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *see also Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("ordinary lack of due care" is insufficient to establish an Eighth Amendment claim). "A defendant must purposely ignore or fail to respond to a prisoner's pain or

possible medical need in order for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060.

The Magistrate Judge concluded that Plaintiff's hand injury constituted a serious medical need for purposes of the Eighth Amendment and this Court agrees with the Magistrate Judge's analysis. Thus, the dispositive question is whether any of the three named Defendants was deliberately indifferent to Plaintiff's serious medical need. The Magistrate Judge determined that the evidence in the record demonstrates that they were not; this Court agrees with the Magistrate Judge's conclusion.

        **1.**      **Defendant St. Germain**

Plaintiff's claim against Defendant St. Germain arises out of a purported interaction between Plaintiff and Defendant St. Germain on October 4, 2019, the day that Plaintiff injured his hand. However, the evidence in the record, which includes Plaintiff's deposition testimony and Defendant St. Germain's declaration, makes it clear that Plaintiff misidentified Defendant St. Germain as the nurse who examined him on October 4th. Plaintiff describes the nurse who examined him that day as a "fairly short woman" and repeatedly refers to the nurse as "she" and "her" throughout the relevant pleadings. Defendant St. Germain's declaration establishes that he is a tall male, and that he did not interact with Plaintiff until October 5, 2019, the day following the incident that resulted in Plaintiff's injury.

Plaintiff does not assert any claims challenging the adequacy of the care he received on October 5th and there is nothing in the record demonstrating that Defendant St. Germain at any time acted with deliberate indifference to Plaintiff's medical needs. Therefore, the Magistrate Judge concluded that Defendant St. Germain is entitled to summary judgment with respect to Plaintiff's Eighth Amendment claim.

Plaintiff objects to this conclusion, arguing that the Magistrate Judge should have inquired about the identity of the nurse who examined him on October 4th if it was not Defendant St. Germaine. Plaintiff is mistaken; it is his burden—not the Magistrate Judge's—to produce evidence sufficient to survive a motion for summary judgment. *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (the party opposing summary judgment must present sufficient evidence to support his claim). Plaintiff has failed to meet his burden; therefore, the claim against Defendant St. Germain must be denied.[2]

### 2. Defendant Lystad

Plaintiff's deliberate indifference claim against Defendant Lystad concerns her alleged actions/inaction in the days following her October 7, 2019 encounter with Plaintiff. Plaintiff claims that Defendant Lystad was deliberately indifferent to his serious medical need by failing to schedule a follow-up appointment three weeks after the initial appointment as allegedly recommended by Dr. Sawyer and by failing to respond to his health services kites in which he sought follow-up care to fix the splint after he prematurely removed it. The Magistrate Judge concluded that Plaintiff's claim against Defendant Lystad fails because there is no evidence in the record to suggest that Dr. Sawyer recommended that Plaintiff be seen for a follow-up appointment after three weeks of wearing the splint. In addition, the Magistrate Judge notes that Plaintiff was scheduled for an appointment on October 16, 2019 but Plaintiff refused to go to the appointment due to it being scheduled as a "sick call" rather than a "follow-up" appointment. Therefore, the Magistrate Judge concluded that the evidence in the record demonstrates that Plaintiff's alleged

---

[2] The remainder of Plaintiff's objection regarding this portion of the Report and Recommendation is irrelevant.

inability to access necessary care was attributable to his own refusal to comply with the rules for obtaining such care and not to any outright denial of care by Defendant Lystad.

Plaintiff counters that he did not refuse to go to the October 16 appointment, rather he argues, there was no appointment scheduled. He claims that if he had refused to go to the appointment, he would have received an infraction and because he did not receive an infraction, he must not have refused the appointment. As evidence of this, Plaintiff points to the Department of Corrections inmate orientation handbook, which he claims states that attendance for medical appointments is mandatory and "failure to appear for scheduled appointment will be recorded in your medical file, and *may be* infracted." Dkt. No. 58 at 12 (emphasis added). The Court does not find this argument persuasive. As the foregoing quote indicates, the failure to appear for the appointment *will be* recorded in the inmate's medical file (here, it was, *see* Dkt. No. 45 at 5) but will not necessarily result in a written infraction added to the inmate's file (here, apparently one was not). The absence of an infraction does not mean that Plaintiff did not refuse to go to the appointment. Moreover, Defendants produced two health services kites that establish that an appointment was scheduled for October 16, 2019, contrary to Plaintiff's claim that an appointment was not scheduled for that day. *See* Dkt. No. 45 at 4-5. Lastly, on the health services kite dated October 14, 2019, Plaintiff complains that upcoming October 16 appointment is scheduled as a "sick call" rather than a "follow-up" appointment, further substantiating Defendants' assertion that Plaintiff refused to go to the October 16 appointment because it had been scheduled as a "sick call." *Id*. at 5. Thus, there is no evidence in the record to establish that Defendant Lystad was deliberately indifferent to Plaintiff's serious medical need. The claim against her must be dismissed.

### 3. Defendant Dahne

Plaintiff's deliberate indifference claim against Defendant Dahne is based on his contention that Defendant Lystad was deliberately indifferent to Plaintiff's serious medical needs and Defendant Dahne failed to intervene and ensure that Plaintiff received the required case. The Magistrate Judge recommended that this claim against Defendant Dahne be dismissed because Plaintiff failed to establish that Defendant Lystad engaged unconstitutional conduct towards Plaintiff. Plaintiff does not object to this recommendation and this Court agrees with the Magistrate Judge's assessment. Therefore, the deliberate indifference claim against Defendant Dahne is dismissed.

### B. The Due Process and First Amendment Claims

As stated above, Plaintiff filed several grievances with Defendant Dahne, the grievance coordinator at SCCC. The first of which was on October 7, 2019, in which Plaintiff alleged that he had been denied pain medication, that he had not been examined by a doctor, and that he had been denied a shower for 72 hours. Dkt. No. 44 at 2. Plaintiff then filed a series of "appeals" in which he complained that his medical visit had been designated a "sick call" instead of a "follow-up" appointment. *Id*. at 3-4. Defendant Dahne did not resolve the initial grievance and appeals for nearly 20-months. Plaintiff alleges that Defendant Dahne violated his due process rights and First Amendment rights when he failed to timely investigate or respond to the grievances.

Magistrate Judge Peterson noted that a prisoner does not have a constitutional right to a specific grievance procedure. s*ee Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). Thus, the Magistrate Judge concluded that any claim alleging deficiencies in the grievance process necessarily fails to state a claim for relief under § 1983. In his objection to the Report and Recommendation, Plaintiff again reiterates that there was

a multiple months-long delay before Defendant Dahne finally responded to Plaintiff's grievances. Like the Magistrate Judge, this Court finds the long delay in resolving Plaintiff's grievances troubling. However, there is no evidence in the record demonstrating that the delay in the grievance process ultimately affected the medical outcome in this case. Plaintiff initially complained that he had not been prescribed pain medication and had not seen a doctor as of October 7, 2019, but the evidence establishes that his complaint is inaccurate. The evidence establishes that Plaintiff was examined by a nurse on October 4 and by Defendant St. Germain who consulted a physician assistant on October 5 and ordered pain medication for Plaintiff that same day. The evidence further establishes that Plaintiff was examined by Defendant Lystad on October 7, his hand x-rayed and splinted, and he was prescribed more pain medication. Defendant Lystad consulted an orthopedist on October 9 who instructed that Plaintiff should remain in the splint for four to five weeks. Therefore, the record evidence establishes that contrary to Plaintiff's assertion in grievance, he was examined by at least two medical professionals and prescribed pain medication on or before October 7.

In addition, this Court concludes that none of the Defendants' actions were the proximate cause of any further injury related to Plaintiff's hand. Rather, the evidence establishes that Plaintiff prematurely removed the split and then refused treatment when the medical appointment he requested was designated a "sick call" instead of a "follow-up" appointment. Plaintiff complains that his hand did not heal properly, but his medical condition cannot be blamed on Defendant Dahne's delay in responding to the grievance when everything Plaintiff complained about in the grievance—lack of pain medication and not being examined by a doctor—was either resolved before the grievance was filed or shortly thereafter.

### C. The Remainder of Plaintiff's Objections

The remainder of Plaintiff's objections are without merit. For instance, Plaintiff claims that the Report and Recommendation is "erroneous" because the Magistrate Judge determined that his objections were not filed in a timely manner. Dkt. No. 58 at 2. While it is true that the Magistrate Judge noted the untimeliness of Plaintiff's response (in addition to the fact that it exceeds the page limitation set forth in the local rules), she nevertheless "accepted and considered Plaintiff's brief despite these deficiencies." Dkt. No. 57 at 2, fn. 1. Plaintiff also objects that the Magistrate Judge declined to review a document he filed on September 21, 2022, titled "Re-Reply". *See* Dkt. No. 56. It was well-within the Magistrate Judge's discretion to disregard this filing as it did not comport with the local rules and this Court, likewise, declines to review the filing. Lastly, Plaintiff objects that the Magistrate Judge did not address his motion for a certificate of appealability. The requirement for a certificate of appealability only applies to claims for habeas corpus relief arising under 28 U.S.C. § 2254 or § 2255. As this case was brought pursuant to 28 U.S.C. § 1983, Plaintiff does not need a certificate of appealability. *Jenkins v. Caplan*, 2010 WL 3057410, at *1 (N.D. Cal. Aug. 2, 2010) (stating that a certificate of appealability is inapplicable to a § 1983 action).

//
//
//
//
//
//
//

## IV.   CONCLUSION

For the foregoing reasons, the Court HEREBY ORDERS that:

(1)   The Report and Recommendation is approved and adopted;

(2)   Defendants' motion for summary judgment (Dkt. No. 42) is GRANTED; and

(3)   The Amended Complaint and this action are DISMISSED with prejudice.

Dated this 30th day of November 2022.

*Barbara J Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge